IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------ x
                                                 :
IN RE                                            :
                                                 :
UNITED STATES OF AMERICA,                        :
  vs.                                         Case: 1:07-mc-00228
I. LEWIS LIBBY,                                  Assigned To : Walton, Reggie B.
                                                 Assign. Date : 5/25/2007
Criminal Case No. 05-394 (RBW)                   Description: MISC.

------------------------------------------------ x

## APPLICATION FOR ACCESS TO LETTERS
## DIRECTLY SENT TO THE COURT CONCERNING SENTENCING

Pursuant to Local Criminal Rule 57.6, ABC, Inc., the American Society of Newspaper Editors, the Associated Press, Dow Jones & Company, Inc., Cable News Network, Inc., National Public Radio, Inc., NBC Universal, Inc., Newspaper Association of America, Radio-Television News Directors Association, the Reporters Committee for Freedom of the Press, Society of Professional Journalists, and The Washington Post (hereafter the "Applicants") respectfully submit this Application to inspect and copy letters received by the Court concerning the sentencing of defendant I. Lewis Libby.[1] This Application is submitted in response to the Court's Order of May 11, 2007 requesting briefing on this issue.

These letters reflect efforts by members of the public to directly influence the Court in its determination of the defendant's sentence. As every court to address the issue has concluded, such letters are attempts to influence one of the Court's core judicial functions and therefore are

---

[1] Each of the Media Applicants has an interest in these proceedings arising out of the news coverage of defendant's criminal proceedings provided by their employees, and each previously has submitted Applications concerning various access issues in this case.

judicial documents to which the public's common law right of access attaches. As a result, there is a presumption of public access to the letters.

That presumption is entitled to particular weight in this case. The defendant was one of the highest-ranking public officials in the Executive Branch. The sentencing of the defendant in a case such as this one necessarily receives enormous public scrutiny. The sentence is itself highly newsworthy, and the sentence imposed on a high-profile public official often influences how members of the public perceive the overall fairness of the criminal justice system. The fact that these letters are being made available to all of the parties and have the potential to influence the Court weigh strongly in favor of their disclosure to the public.

For these very reasons, other courts receiving similar requests have permitted substantial access in cases involving public or quasi-public officials. For example, letters sent by current or former public officials should be released because the public has a right to know which government officials are using their positions to try to influence court decisions. Similarly, letters sent by persons reasonably classified as public figures should be released because, especially in the circumstances of this case, such persons have little or no reasonable expectation of privacy in such letters. And there can be no serious question that any letters that impact the Court's sentencing determination, or are referenced in submissions to the Court, should be released pursuant to the public's right of access to evidence or other materials related to a judicial decision. While these Applicants recognize that the Court otherwise retains more discretion with regard to other categories of letters, they respectfully submit that such discretion should be exercised to permit the maximum degree of access that is reasonable under the circumstances, including the possibility of releasing redacted version of such letters.

## ARGUMENT

I. **The Common Law Right of Public Access to Judicial Records Applies to the Letters Received by the Court**

This Circuit has long recognized a common law right of access to judicial records and documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (recognizing common law right "to inspect and copy public records and documents, including judicial records and documents"); *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) ("In 'the courts of this country' – including the federal courts – the common law bestows upon the public a right of access to public records and documents.") (citation omitted); *In re Nat'l Broad. Co.*, 653 F.2d 609, 612-13 (D.C. Cir. 1981) (public's "common law right to inspect and copy judicial records is indisputable" and both "'precious'" and "'fundamental'") (footnotes omitted). The presumption in favor of access recognized in this Circuit is quite strong, and it may be denied only:

> if the district court, after considering "the relevant facts and circumstances of the particular case", and after "weighing the interests advanced by the parties in light of the public interest and the duty of the courts", concludes that "justice so requires". The court's discretion must "clearly be informed by this country's strong tradition of access to judicial proceedings".

*Id.* (footnotes omitted).

Every federal court that has addressed this precise question has concluded that letters sent directly to the Court are judicial records to which the common law presumption of access applies, because they are efforts to influence the court in performing a judicial function. In *United States v. Gotti*, 322 F. Supp. 2d 230 (E.D.N.Y. 2004), for example, Judge Block observed that letters sent directly to the court were "designed to have a direct impact on the Court's sentence" of the defendant. *Id.* at 249. "[C]onsequently, they take on the trappings of a judicial document under the common law since they are the functional equivalent of being 'physically

3

filed' with the court, and are directly 'relevant to the performance of the judicial function.'" *Id.* (citation omitted); *see also United States v. Kushner*, 349 F. Supp. 2d 892, 903-04 (D.N.J. 2005) (sentencing letters are judicial records, and common law right of access applies); *United States v. Lawrence*, 167 F. Supp. 2d 504, 508-09 (N.D.N.Y. 2001) (same); *United States v. Corbitt*, 1988 WL 94278, at *8 (N.D. Ill. Aug. 24, 1988) (common law right to inspect judicial records applies to sentencing letters), *rev'd on other grounds*, 879 F.2d 224 (7th Cir. 1989).[2]

These decisions emanate from Circuits that recognize a common law right of access with parameters similar to the standards applied in this Circuit. Whether a document is a judicial record to which the common law right of access applies depends on "the role it plays in the adjudicatory process." *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997). More broadly, the concept of a "public record" is grounded in protecting "the public's interest in keeping 'a watchful eye on the workings of public agencies.'" *Washington Legal Found.*, 89 F.3d at 905 (quoting *Nixon*, 435 U.S. at 598); *see also El-Sayegh*, 131 F.3d at 161. Sentencing a convicted felon unquestionably is part of the adjudicatory process as the Court will be making a decision on the defendant's punishment. *See El-Sayegh*, 131 F.3d at 161 (common law right of access assumes an issue that will actually be the subject of a judicial decision). It is, like other court proceedings, "in its entirety and by its very nature a matter of legal significance," and its meaning and legal significance are "a function of the record on which it was rendered." *Washington Legal Found.*, 89 F.3d at 906.

---

[2] One additional case, *United States v. Boesky*, 674 F. Supp. 1128 (S.D.N.Y. 1987), appears to reject access to a few such letters without discussing the applicable legal standard. *Id.* at 1129. However, the Court in *Boesky* made clear that its decision was heavily influenced by the fact that the vast majority of the letters received by the Court became public anyway because the defendant incorporated them in his sentencing memorandum. As a result, access was only denied to "the remaining few letters" which included "letters from the defendant's immediate family." *Id.* Thus, *Boesky* engaged in a balancing of factors very similar to the analysis applied by courts that explicitly apply a common law standard.

Indeed, if communications with the Court meant to influence its decisions were not subject to the common law right of access, the public could be deprived of the full record upon which those decisions were made. It is noteworthy that Local Criminal Rule 49.1(b) and Local Civil Rule 5.1(b) prevent parties and their attorneys from engaging in any such efforts by prohibiting correspondence with a judge except when requested. Allowing third parties to directly communicate with the Court in an attempt to impact its decision, without treating such correspondence as a judicial record, would fly in the face of the spirit of these rules. Moreover, the fact that these letters are being made available to the parties further supports subjecting them to the common law right.

In short, the letters submitted directly to the Court are directly relevant to the performance of a judicial function and play a role in the adjudicatory process. Accordingly, they are judicial records to which the common law right of access applies.

## II.  The Public Should Be Provided Access to the Letters

Courts analyzing request for access to similar letters have grouped them into several categories, which are instructive for purposes of this case.

First, any "letters excerpted or explicitly referenced in defendant's memorandum" to the Court should clearly be released. *Kushner*, 349 F. Supp. 2d at 905-06; *see also Lawrence*, 167 F. Supp. 2d at 506 (no dispute that letters attached to or explicitly referenced in submissions are "part of the public record" to which the press is entitled to access). Submissions to the Court by parties concerning sentencing are similar to any other document filed with the Court by a party that is relied on in making a judicial determination. In addition, these letters will have been "thrust into the public domain by virtue of their inclusion in a public document that counsel will be called upon to defend in public," so any potential embarrassment experienced by the authors is no different than for any other person who may play a role in judicial proceedings, such as a

5

witness. *Kushner*, 349 F. Supp. 2d at 905-06. Accordingly, any letters referenced in a submission by counsel must be released.

Second, if any letter received by the Court was sent by a current or former public official, it also should be made public. *See Gotti*, 322 F. Supp. 2d at 251 ("Letters received from public officials seeking to use their offices to impact a sentence will invariably be disclosed."); *Corbitt*, 1988 WL 94278, at **8-9 (releasing all letters from public officials); *Kushner*, 349 F. Supp. 2d at 906-07 (releasing letters from current and former public officials). Given that the defendant was a high-ranking public official for many years, letters from colleagues and other current or former public officials may well be among those sent to the Court. The basis of the common law right of access to public and judicial records is "the public's interest in keeping 'a watchful eye on the workings of public agencies.'" *Washington Legal Found.*, 89 F.3d at 905 (quoting *Nixon*, 435 U.S. at 598); *see also Corbitt*, 1988 WL 94278, at *8 ("The public has a paramount right to evaluate the activities of its officials."); *Kushner*, 349 F. Supp. 2d at 906 ("The public has a strong interest in the use officials make of their positions of public trust."). Thus, the public has a right to know which officials used their government positions to try to influence a court's sentencing decision, as well as a right to evaluate whether the Court's decision was influenced by their appeals.

Moreover, current and former public officials also have little or no reasonable expectation of privacy in the letters they write to a court. When current public officials are trying "to bring their public power to bear upon sentencing proceedings," they have little or no privacy interest in the means used. *Kushner*, 349 F. Supp. 2d at 906; *see also Corbitt*, 1988 WL 94278, at *9 (releasing letters in which the writer "draws attention to his or her public office"). Former public officials similarly have a "greatly diminished expectation of privacy." *Kushner*,

6

349 F. Supp. 2d at 907. And both have greater ability than private individuals to explain or clarify their letters. *See id.*; *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 164 (1967) (C.J. Warren, concurring) (public officials and public figures as a class have "ready access" to the media to counter criticism of their views).

Indeed, the same is true of persons who may reasonably be classified as public figures. Particularly in this case, it is unlikely that any public officials or public figures who wrote directly to the Court to try to influence sentencing expected that their letters would be kept private, and any such expectation would be unreasonable. The defendant, of course, is a high-profile former public official and a public figure. *Cf. Kushner*, 349 F. Supp. 2d at 895 (more than 750 letters were received by the court concerning the sentencing of a prominent real estate developer, political fundraiser, and philanthropist). It is well-known that this case has attracted substantial media attention, and indeed throughout this case the media has sought public access to various briefs, decisions, exhibits, and audiotapes. Thus, any public officials or public figures would reasonably anticipate that any efforts to influence defendant's sentence would be made public and therefore would write letters "in a manner that bespeaks an expectation of public consumption." *Id.* at 907. Nor would the prospect of possible mention in the media be likely to deter such persons, who are used to media attention. Therefore, any concern that public figures would be chilled from submitting such letters is minimal, and far outweighed by the interests favoring access.

In addition, if there are any letters that the Court chooses not to release now, any that ultimately impact the Court's determination of defendant's sentence clearly must be released as a matter of law. *See, e.g., Corbitt*, 1988 WL 94278, at *8 (releasing letters because "the outpouring of letters influenced our sentencing decision"); *Gotti*, 322 F. Supp. 2d at 250 ("if the

7

letters should have a significant impact on the court's sentence, the public is entitled to know this"). In those circumstances, the letters will have influenced the judicial decision-making process and the Court's Article III duties, and thus would become "tantamount to evidence." *Kushner*, 349 F. Supp. 2d at 906. The public's right of access is at its apex for any material on which the Court relies in making a substantive decision, including letters from third parties. *See, e.g., In re Nat'l Broad. Co.*, 653 F.2d at 612-13 (public's right to inspect and copy evidence is "indisputable" and both "'precious'" and "'fundamental'") (footnotes omitted); *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C. Cir. 1976) ("a serious question exists as to whether sealing . . . exhibits played in open court is ever justifiable"), *rev'd on other grounds sub nom. Nixon*, 435 U.S. 589; *In re American Broad. Cos.*, 537 F. Supp. 1168, 1170 (D.D.C. 1982) (common law right of access to exhibits "well-established").

For all other letters not falling into one of these presumptive categories, we respectfully submit that the Court should only consider withholding release if the letters evince a clear presumption of confidentiality or contain obviously personal information. Only such letters could potentially implicate the privacy and related interests that courts have recognized may tip the balance in favor of confidentiality. When making these determinations, we note that the mere fact that the writer sent a letter directly to the Court does not establish a privacy interest sufficient to overcome the presumption of access. *See, e.g., Corbitt*, 1988 WL 94278, at *9 (releasing all 43 letters sent directly to the court, and redacting only "very personal" or identifying information from three that bore "an air of confidence"). Moreover, if there are discrete private details in any of these letters that particularly concern the Court, such information could be redacted before releasing the letter.

*Gotti* illustrates the strength of the privacy interests potentially necessary to overcome the public's right of access. There, the court received letters sent by the defendant's wife, his son, and a woman with whom he had a 14 year "personal relationship." *Gotti*, 322 F. Supp. 2d at 232, 234, 250. All the letters revealed "the nature of the writers' personal relationships with the defendant" – the defendant's wife urged the court to sentence him harshly, and the woman asked for leniency. *Id.* at 250. Moreover, the woman's letters showed her to be extremely emotionally unstable. *See id.* Releasing her letters would have caused her great emotional pain, and she in fact committed suicide days after Gotti was sentenced. *See id.* at 234, 250. In these circumstances, the court denied access. *See id.* at 250; *see also Kushner*, 349 F. Supp. 2d at 908 (presumption of access would be overcome for letters that recounted the defendant's assistance to a young woman with eight children undergoing chemotherapy and surgery to fight her cancer); *United States v. Boesky*, 674 F. Supp. 1128, 1129 (S.D.N.Y. 1987) (withholding letters from defendant's family "which are obviously of a confidential nature").

In this case, however, it is likely that the writers of many of the letters the Court has received had no expectation that they would be kept confidential. These writers are, after all, trying to influence the sentencing in a high-profile criminal prosecution intensely covered by the media. Indeed, the fact that the Court is making these letters available to both the government and the defense, who in turn could choose to use them to influence the Court's decision, in and of itself substantially vitiates any expectation that such letters would be for the Court's eyes only. Particularly in a case such as this one, where the choice of sentence will likely provoke strongly-held views on all sides, public access to materials submitted to the Court is important to facilitate public scrutiny of and public confidence in the fairness of the Court's ultimate sentencing decision. *See, e.g., Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984)

("Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (openness gives "assurance that the proceedings were conducted fairly to all concerned, and it discourage[s] perjury, the misconduct of participants, and decisions based on secret bias or partiality"); *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (same).

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Applicants respectfully request that the Court provide access to letters sent directly to the Court, consistent with the principles set forth in this Application.

Dated: May 25, 2007

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By: /s/ Nathan Siegel   by AJR
Nathan Siegel (D.C. Bar No. 446253)

1050 Seventeenth Street, N.W., Suite 800
Washington, DC 20036
Telephone: (202) 508-1100
Facsimile: (202) 861-9888

*Counsel for Applicants*

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 25, 2007, I caused true and correct copies of the foregoing Application for Access to Letters Directly Sent to the Court Concerning Sentencing to be served via first-class mail, postage prepaid, upon the following:

Patrick Fitzgerald, Esq.
Debra R. Bonamici, Esq.
Office of the United States Attorney/Office of the Special Counsel
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

Kathleen Kedian, Esq.
Peter Robert Zeidenberg, Esq.
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, N.W.
Washington, DC 20005

John DeWitt Cline, Esq.
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500

Joseph A. Tate, Esq.
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104

William H. Jeffress, Jr., Esq.
Alex Joseph Bourelly, Esq.
Alexandra M. Walsh, Esq.
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Theodore V. Wells, Jr., Esq.
James Lewis Brochin, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019-6031

_____ by AJR
Nathan Siegel